# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 7, 2012    Decided March 22, 2013

No. 11-7045

MICHELLE VAN BENEDEN,
APPELLANT

v.

ABDALLAH AL-SANUSI, MAJOR, CHIEF, LIBYAN INTERNAL
SECURITY, BAB-AL-AZIZYEH, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01309)

*Steven R. Perles* argued the cause for appellant. With him on the briefs were *Edward B. MacAllister*, *Richard D. Heideman*, and *Tracy Reichman Kalik*.

*Ramsey Clark* argued the cause for appellees. With him on the brief was *Lawrence W. Schilling*.

Before: TATEL and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

2

BROWN, *Circuit Judge*: On December 27, 1985, members of the Abu Nidal Organization attacked the international flights terminals in Rome's Leonardo da Vinci Airport and Vienna's Schwechat Airport, killing sixteen people and wounding over a hundred more. Peter Knowland was one of those injured in the Vienna attack. Over two decades later, he sued Syria, Libya, and a number of Syrian and Libyan individuals and organizations for sponsoring and supporting the terrorist attacks.[1] The district court dismissed the case as untimely, and Knowland's legal representative, Michelle Van Beneden,[2] appealed. We reverse.

I

The Foreign Sovereign Immunities Act (FSIA) protects foreign sovereigns from suit in the United States unless Congress specifically provides otherwise. 28 U.S.C. § 1604. In the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241–42 (codified at 28 U.S.C. § 1605(a)(7)), Congress waived the immunity of foreign sovereigns designated by the State Department as state sponsors of terrorism in suits for personal injury or death resulting from, among other things, the provision of material support for terrorism. While this waiver removed one barrier to suits against foreign sovereigns, it did not empower plaintiffs to sue them directly: FSIA provided a private right of action for suits against officials, employees,

---

[1] Only Syria, the Syrian Air Force Intelligence, and the chief of the Syrian Air Force Intelligence remain defendants. The district court dismissed all claims against Libya and its agents after Congress passed the Libyan Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008).

[2] Knowland died before the district court filed its opinion, leaving his estate to Michelle Van Beneden. For consistency, we refer to Knowland throughout the opinion.

3

and agents of the foreign sovereign, but plaintiffs seeking to sue the sovereign itself were forced to invoke an independent cause of action, such as one provided by state law. *See Cicippio-Puleo v. Islamic Repub. of Iran*, 353 F.3d 1024, 1029, 1036 (D.C. Cir. 2004).

In 2008, Congress amended this scheme. The National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 ("NDAA"), repealed § 1605(a)(7) and replaced it with § 1605A. Section 1605A is similar to § 1605(a)(7), but it is "more advantageous to plaintiffs." *Simon v. Repub. of Iraq*, 529 F.3d 1187, 1190 (D.C. Cir. 2008), *rev'd on other grounds sub nom.*, *Repub. of Iraq v. Beaty*, 556 U.S. 848 (2009). Among other things, it provides a private right of action against sovereign entities. Yet even as the NDAA rang the knell for § 1605(a)(7) suits, it promised a slow burial. First, a pending action brought under § 1605(a)(7) could be converted into a § 1605A action if the original action "relied upon" § 1605(a)(7) for a cause of action and was "adversely affected" by the statute's failure to provide one. NDAA § 1083(c)(2) (codified as note to § 1605A). Second, "[i]f an action arising out of an act or incident has been timely commenced under section 1605(a)(7) . . . any other action arising out of the same act or incident may be brought under section 1605A" within sixty days of judgment in the § 1605(a)(7) action. NDAA § 1083(c)(3) (codified as note to § 1605A); *see* 28 U.S.C. § 1605A(b) (permitting § 1605A actions if a "related action was commenced under section 1605(a)(7)" within the limitations period).

Because Knowland filed suit after the § 1605A statute of limitations had run, his only hope of obtaining judicial relief depends on his ability to invoke the "related action" provision. According to Knowland, his suit is related to *Estate*

4

*of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, Civ. Action No. 1:06-cv-00727 (D.D.C.) (filed Apr. 21, 2006), a § 1605(a)(7) suit against many of the same defendants for their alleged support of the Rome attack. It is undisputed that *Buonocore* was timely filed and that Knowland's suit would be timely filed under § 1083(c)(3) if *Buonocore* is in fact a related action. Unfortunately for Knowland, the district court concluded the two actions were not in fact related and dismissed the suit for failure to state a claim.[3] We review the dismissal *de novo*. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

II

The Abu Nidal Organization ("ANO") seeks the elimination of Israel and the derailment of the Middle East peace process. BUREAU OF COUNTERTERRORISM, DEP'T OF STATE, COUNTRY REPORTS ON TERRORISM 2011 at 221 (2012). Since it split from the Palestine Liberation Organization in 1974, the ANO has staged attacks in over twenty countries, triggering a State Department designation as a foreign terrorist organization. *Id.*

According to Knowland's complaint, which we assume to be true and construe in the light most favorable to him, *see Papasan v. Allain*, 478 U.S. 265, 283 (1986), the Vienna and

---

[3] The district court held that a § 1083(c)(3) "related action" must be filed by the same plaintiff who filed the predicate § 1605(a)(7) action and that Knowland's action does not arise out of "the same act or incident" as *Buonocore*. On appeal, Knowland challenges both holdings; inexplicably, however, Syria addresses only the second. Viewing this as an implicit concession, *see, e.g.*, *S. Cal. Edison Co. v. FERC*, 603 F.3d 996, 1000 (D.C. Cir. 2010), we do not address the district court's determination that Knowland's suit fails because he was not involved in *Buonocore*.

5

Rome attacks were part of a single "plan to conduct terrorist attacks at airports and tourist attractions frequented by Americans and Israelis." Compl. ¶¶ 29–30. Both groups of attackers trained together in a Syrian-sponsored training camp in Lebanon and coordinated their attacks to occur simultaneously. The two groups used the same type of weapons (Kalashnikov submachine rifles and type F1 hand grenades), which came from a single source (the grenades in each attack bore the same markings), and they executed the same strategy: the terrorists met with an ANO contact upon their arrival at their destination cities, exchanging unused money and passports for clothes and weapons; they surveyed the target terminals the day before the attack; and they initiated the attack at 9 a.m. local time after smuggling their weapons into the airports.

Syria insists the two attacks cannot be the "same act or incident" because of the literal differences between the two attacks: the two airports, "nearly 500 miles" apart, are distinct physical facilities, and the attacks involved different ANO personnel, law enforcement agents, and victims. Appellee Br. at 3. The district court took a similar approach, noting in addition the grammatical singularity of the statutory language ("act or incident" rather than "acts or incidents"). These analyses are overly formulaic.

Guided by the statute's text and purpose, we interpret its ambiguities flexibly and capaciously.[4] When determining

---

[4] "The text, history, and purpose of the statute make clear that the statute does not counsel a narrow reading." *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011) (referring generally to FSIA's terrorism exception). Congress sought to lighten the jurisdictional burdens borne by victims of terrorism seeking judicial redress, such as by ensuring that individuals barred from suit under § 1605(a)(7) would nevertheless be able to bring their claims. Though the statute

6

whether two or more attacks should be deemed part of the same "act or incident," we look not to single points of congruence but to the full spectrum along which discrete actions increasingly relate. Some terrorist organizations are close-knit, insular cells; others are loose-jointed networks of largely independent operational units joined by a common goal. Interpreting the proximal connection between two acts of terrorism therefore requires a number of conceptual judgments—for instance, about the causal role of a particular organizational objective, the relationship between the organization and its members or affiliates, and the degree and nature of coordination among the attacks. Mining semantics by invoking the ordinary meanings of "act" and "incident" provides no obvious help. Those ordinary meanings suggest it is as reasonable to say that "act" refers to a single terrorist pulling the trigger a single time, while "incident" refers to the totality of that terrorist's violence in a single day, as it is to say that "act" refers to the Vienna attack, while "incident" refers to the airport assaults as a whole.

This conceptual ambiguity is perhaps the inevitable concomitant of such events. Consider two others. On June 6, 1944, the Allied army landed on a stretch of Normandy coast spanning over fifty miles; on September 11, 2001, planes crashed into the Pentagon, both World Trade Center towers, and an empty field in Pennsylvania. Was the American landing at Utah beach part of the same "incident" as the British and Canadian landings at Juno beach? Was American

---

of limitations for § 1605(a)(7) claims was already set at the generous length of ten years, FSIA contained no mention of "related actions" until the NDAA, which reflected Congress's judgment that "American citizens who have been aggrieved by any state sponsor of terrorism . . . deserve every possible means of redress available to them." 154 Cong. Rec. 288 (2008) (statement of Rep. McHugh).

7

Airlines Flight 11's crash into the North Tower of the World Trade Center part of the same "incident" as American Airlines Flight 77's crash into the Pentagon? It is possible to answer both "yes" and "no" to each question. Ultimately, the answer depends on a broad consideration of all relevant facts.

Taking everything together—a single group of people committing two simultaneous attacks planned as part of a coordinated assault on an identifiable group of individuals at similar locations using weapons from the same shipment—we think the Vienna and Rome attacks constitute the same "incident." The factors that mark the two attacks as constituents of a single incident distinguish this case from one where the only connections between the two terrorist attacks are the attackers' ideology and purpose, training, and general methodology. The Vienna and Rome attacks were not discrete attacks that happened to occur on the same day, sharing just enough features that observers could project a relationship; they were organized jointly by the same terrorist organization and planned to occur simultaneously. Indeed, Syria concedes that the simultaneous attack of two tour buses at opposite sides of a city would be a single act or incident if the attacks were planned together and by the same people. We see no difference here.

As the jurisprudence under Federal Rule of Civil Procedure 15(c) illustrates, Congress has allowed relation back of newly filed claims when doing so assures defendants notice within the limitations period. *See Schiavone v. Fortune*, 477 U.S. 21, 31 (1986); *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). The analogy is neither precise nor dispositive, but we nevertheless note that in this case, the "act or incident" requirement does no violence to the defendants' notice interests. Given the nature of the

8

allegations, the suit relating to the Rome attack put them on notice they may be liable for the Vienna attack.

III

For the reasons stated, the district court's order dismissing the case is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*